1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARTHEL G. GALES and JOANNE
MANSFIELD, individually and the
marital community thereof,

Plaintiff,

v.

DR. THOMAS LORANCE, CHG
COMPANIES, INC. DOING BUSINESS
AS COMPHEALTH, AND DOES 1-10,

Defendants.

CASE NO. 15-5730 RJB

ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary Judgment based

on the Statute of Limitations.  Dkt.10.  The Court has considered the pleadings filed in support of

and in opposition to the motion and the file herein.

Plaintiffs filed this medical malpractice case on October 13, 2015 against Dr. Thomas

Lorance, a physician in an urgent care clinic affiliated with the Veterans' Administration

("VA"), and Dr. Lorance's employer for failure to follow up on a chest x-ray he ordered for Mr.

1  Carthel Gales on May 29, 2009.  Dkt. 1.  Defendants now move for summary dismissal of the

2  case, arguing that the statute of limitations bars the claims asserted against them.  For the reasons

3  set forth below, the motion should be granted and the case dismissed.

4  **I.   <u>FACTS</u>**

5  On May 29, 2009, Dr. Lorance examined Mr. Gales regarding chest pain.  Dkt. 11, at 32-36.

6  Dr. Lorance ordered a chest x-ray.  *Id.*  Dr. Lorance noted that the "[c]hest X ray shows some

7  residual of COPD with not acute changes."  *Id.*, at 33.

8  The radiologist's interpretative report of the x-ray provided,

9  NEW RIGHT UPPER CHEST LOBULATED NODULE MEASURING UP TO
   19 MM SIZE IS WORRISOME FOR NEOPLASM. AS IT CANNOT BE
10 CONFIDENTLY IDENTIFIED ON LATERAL VIEW, HOWEVER, IT IS
   UNCERTAIN IF THIS IS PLEURAL BASED OR WITHIN THE LUNG.
11 REGARDLESS IF THIS IS A RAPIDLY EMERGING PLEURAL PLAQUE
   VERSUS LUNG NODULE, FURTHER EVALUATION WITH CHEST CT
12 SCAN IS RECOMMENDED TO FURTHER DELINEATE.

13 Dkt. 13, at 9.  Plaintiffs maintain that Dr. Lorance failed to inform Mr. Gales of the radiologist's

14 findings or order the recommended [computerized tomography] ("CT") scan.  Dkts. 1 and 13, at

15 19.  Dr. Lorance discharged Mr. Gales and did not see Mr. Gales again.  Dkt. 11, at 32-36.  Dr.

16 Lorance died in 2013.

17 On June 22, 2012, Mr. Gales was seen by his primary care provider, Dr. Allen, who

18 ordered a chest x-ray for Mr. Gales.  Dkt. 11, at 5-9.  The x-ray revealed a lung mass which

19 appeared to have increased in size in comparison with the May 29, 2009 image.  *Id.,* at 11.  Dr.

20 Allen referred Mr. Gales to a pulmonologist.  *Id.*

21 On July 17, 2012, Mr. Gales was examined in a pulmonary clinic by Dr. Maika Onishi

22 and Dr. Gustavo Matute-Bello.  Dkt. 11, at 13-16.  Dr. Onishi noted that Mr. Gales presented

23 "for evaluation of large right apical mass" noted on a chest x-ray.  *Id.*, at 13.  Dr. Onishi's

24

1  assessment was that the mass was "concerning for malignancy" and has been "progressively

2  enlarging with time." *Id.*  Dr. Matute-Bello, agreed with Dr. Onishi's assessment, and further

3  noted that the mass "has been growing since at least 2007. *Id.*, at 17.

4        A chest CT scan was ordered and on July 31, 2012, Mr. Gales underwent a lung biopsy.

5  Dkt. 11, at 16-22.  On August 3, 2012, Mr. Gales was diagnosed with bronchoalveolar

6  carcinoma, a type of lung cancer. *Id.*, at 24.  It was concluded that the tumor was, at that point,

7  inoperable, and Mr. Gales underwent chemotherapy and radiation.  Dkt. 11, at 24-29.

8        On August 6, 2012, Mr. Gales obtained copies of all his medical records from the VA.

9  Dkt. 11, at 31.

10       On January 21, 2014, Mr. Gales was seen by Dr. Allen for a follow up visit.  Dkt. 11, at

11 39.  The "chief complaint" section of the progress notes provides, in part:  "[Mr. Gales] has some

12 sort of form from the VA re back payment on lung cancer – he almost certainly had this cancer

13 on a chest x-ray in May of 2009 and it is hoped his back pay from SC VA determination would

14 be to May of 2009." *Id.,* at 39.

15       Mr. Gales filed an administrative tort claim with the VA on August 11, 2014 for its

16 failure to treat his lung cancer beginning with his visit in May 2009.  Dkt. 13, at 13-16.

17       On October 17, 2014, an attorney for the VA wrote to Mr. Gales and informed him that

18 the two Defendants here, Dr. Lorance and his employer CHG Companies Inc., were working as

19 independent contractors when Dr. Lorance's treated Mr. Gales in 2009.  Dkt. 13, at 11.  The

20 letter further provided that "independent contractors are not considered employees of the

21 government for purposes of the Federal Tort Claims Act, and the VA therefore cannot be held

22 liable for their actions." *Id.* Mr. Gales states that this letter was the first time he became aware

23 that Dr. Lorance was an independent contractor and not an employee of the VA.  Dkt. 13, at 19.

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 3

1    Plaintiffs initially filed suit against the Defendants here on May 5, 2015 in Pierce County,

2    Washington Superior Court.  Dkt. 11, at 45-52.  The May 5, 2015 complaint was voluntarily

3    dismissed on September 18, 2015.  *Id.,* at 2.

4    Plaintiffs filed this case on October 13, 2015, asserting that the Court has diversity

5    jurisdiction under 28 U.S.C. § 1332.  Dkt. 1.  Plaintiffs maintain that the type of lung cancer that

6    Mr. Gales has, if diagnosed early, has a "very favorable prognosis" and can be "operated on for

7    cure." *Id.,* at 5.  Plaintiffs argue that due Defendants' negligence, his lung cancer was discovered

8    too late, and he now has "no hope of recovery." *Id.*  They maintain that they are entitled to

9    damages as a result. *Id.*

10                    **II.        DISCUSSION**

11   **A.  SUMMARY JUDGMENT STANDARD**

12   Summary judgment is proper only if the pleadings, the discovery and disclosure materials

13   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

14   movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

15   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

16   showing on an essential element of a claim in the case on which the nonmoving party has the

17   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

18   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

19   for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

20   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

21   metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

22   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

23   requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

24

1   *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elect. Service Inc. v. Pacific Electrical Contractors*

2   *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

3          The determination of the existence of a material fact is often a close question.  The court

4   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

5   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

6   *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

7   of the nonmoving party only when the facts specifically attested by that party contradict facts

8   specifically attested by the moving party.  The nonmoving party may not merely state that it will

9   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

10  to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

11  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

12  be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

13  **B.  WASHINGTON'S STATUTE OF LIMITATIONS**

14          As a federal court sitting in diversity, this court is bound to apply state law.  *State Farm Fire*

15  *and Casualty Co. v. Smith*, 907 F.2d 900, 901 (9th Cir. 1990).   In applying Washington law, the

16  Court must apply the law as it believes the Washington Supreme Court would apply it.

17  *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

18  "'[W]here there is no convincing evidence that the state supreme court would decide differently,

19  a federal court is obligated to follow the decisions of the state's intermediate appellate courts .'"

20  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.,* 249 F.3d 958, 960 (9th Cir.2001) (*quoting Lewis v.*

21  *Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996) (*internal quotation marks*

22  *omitted*)).

23

24

1   Under Washington law, a suit for damages for an injury occurring as a result of health care

2   against a physician, the physician's estate, or an entity employing the physician, "based upon

3   alleged professional negligence shall be commenced within three years of the act or omission

4   alleged to have caused the injury or condition." RCW 14.16.350.

5   Dr. Lorance examined Mr. Gales on May 29, 2009. Plaintiffs did not file the first case

6   against Defendants until May 5, 2015 and did not file this case until October 13, 2015. Plaintiffs

7   did not meet the three year statute of limitations.

8   **C. TOLLING AND WASHINGTON'S STATUE OF LIMITATIONS**

9   A medical malpractice action can still be brought after expiration of the three years of the act

10   or omission alleged to have caused the injury, if brought within "one year of the time the patient

11   or his or her representative discovered or reasonably should have discovered that the injury or

12   condition was caused by said act or omission . . ." RCW 14.16.350 (3). This discovery rule

13   "merely tolls the running of the statute of limitations until the plaintiff has knowledge of the

14   'facts' which give rise to the cause of action; it does not require knowledge of the existence of a

15   legal cause of action itself." *Cox v. Oasis Physical Therapy, PLLC*, 153 Wash. App. 176, 189-

16   90, 222 P.3d 119, 125-26 (2009)(*quoting Richardson v. Denend*, 59 Wash.App. 92, 95–96,

17   (1990)). "The key consideration under the discovery rule is the factual, as opposed to the legal,

18   basis of the cause of action." *Id.* (*quoting Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*,

19   123 Wash. 2d 15, 35 (1993).

20   Plaintiffs did not meet this "discovery" portion of the statute's tolling provision. On

21   August 3, 2012, Mr. Gales was diagnosed with lung cancer. On August 6, 2012, Mr. Gales

22   requested and received all his medical records from the VA. At that time, he was aware that he

23   had lung cancer, the mass had grown since he had the 2009 x-ray, Dr. Lorance did not tell him

24

1    about the mass in the 2009 x-ray, and the cancer was, by then, inoperable.  Even if Plaintiffs did

2    not "discover" their claim until later, the medical record shows that at least by January 21, 2014,

3    Mr. Gales had discovered that Dr. Lorance's alleged failures had caused him inoperable cancer.

4    (It was then that Mr. Gales provided Dr. Allen a form from the VA regarding a disability claim

5    for lung cancer.   The record indicates that Plaintiff felt "he almost certainly had this cancer on a

6    chest x-ray in May of 2009.")  Plaintiffs did not file the first case until May of 2015; this case

7    was filed in October of 2015.  Plaintiffs failed to file within a year of the discovery that Mr.

8    Gales injury was caused by Dr. Lorance's acts or omissions.

9        Washington's medical malpractice suit's statute of limitations may be further tolled "upon

10   proof of fraud [or] intentional concealment . . . until the date the patient or the patient's

11   representative has actual knowledge of the act of fraud or concealment . . . the patient or the

12   patient's representative has one year from the date of the actual knowledge in which to

13   commence a civil action for damages."  RCW 14.16.350 (3).  "This provision 'requires more

14   than just the alleged negligent act or omission forming the basis for the cause of action.'  Rather,

15   the provision 'is aimed at conduct or omissions intended to prevent the discovery of negligence

16   or of the cause of action.'"  *Cox v. Oasis Physical Therapy PLLC,*  153 Wn.App. 176, 187 (2009)

17   (*quoting Gunnier v. Yakima Heart Ctr., Inc.,* 134 Wn.2d 854, 867 (1998)).

18       Plaintiffs fail to meet the fraud or intentional concealment tolling provision.  Plaintiffs assert

19   that "[i]t was the VA's belated disclosure of Dr. Lorance's employment status that provided

20   evidence of fraud and intentional concealment, for which a tolling of the statute of limitations is

21   available and appropriate in the interests of justice."  Dkt. 12, at 11.  They argue that "Dr.

22   Lorance's employment status speaks to substantive questions of fact about the nature and

23   motives of his conduct."  *Id.*, at 9.  They acknowledge that "[w]hile there may have earlier been a

24

1   case for malpractice based on incongruity between what Dr. Lorance, or someone else, entered in

2   the record ('Chest x-ray shows some residual COPD with no acute changes') and the plain facts

3   of what the x-ray actually showed. . . without more information about why Dr. Lorance made

4   such an incorrect entry, the plaintiff might have failed to meet the current federal court pleading

5   standards." Dkt. 12, at 3.  Plaintiffs argue that "it wasn't until Mr. Gales received a letter from

6   the [VA] in relation to the previously settled Federal Tort Claims Act claim against the VA in

7   this matter . . . that he became aware that Dr. Lorance wasn't an employee of the VA hospital."

8   Dkt. 12, at 3.  Plaintiffs assert that upon learning of Dr. Lorance's employment status, they

9   became aware that "fraud or intentional concealment likely took place." Dkt. 12, at 4.  They

10  maintain that "prior to this insight, any pleading would have been based on the incorrect records

11  entry alone." Dkt. 12, at 4.  Plaintiffs reason:

12          [T]he additional, newly discovered fact that Dr. Lorance was an
        independent contractor points to something more egregious than clerical error.  It
13      indicates that Dr. Lorance, for whatever motive - laziness, apathy, pressure from
        excessive workload- simply failed to perform a task required by his job.  He likely
14      didn't even review the x-ray.  His entry in the record may be a falsification, a
        fiction that he had performed diligent analysis of the x-ray and found nothing of
15      note to report.
            The prima facie evidence of his fraudulent misrepresentation of the x-ray
16      results and intentional concealment of his substandard conduct was not apparent
        to the plaintiff until the letter from the [VA] arrived in October 2014 and Dr.
17      Lorance's status as a non-employee of the hospital became known to him.  His
        itinerant status as visiting physician adds to the likelihood that Dr. Lorance was
18      under the type of pressure that might make him cut corners by pretending for the
        record he had studied x-rays he never in fact bothered to examine.  Had he been a
19      long-term, full-time employee of the VA hospital, he may have felt a greater
        responsibility to perform professionally for his employer, knowing any such
20      lapses would eventually be identified and come back to haunt him at his place of
        employment.  With no ongoing personal commitment to individual patients at the
21      VA hospital or close connection to hospital administrators and staff, Dr. Lorance
        may have reasoned he'd be long gone, perhaps working in another state, by the
22      time the error was noticed.  His motive as "temp" was to do his job quickly and
        move on to the next assignment.

23

24

1  Dkt. 12, at 4-5.  Plaintiffs argue accordingly, that "[t]here is evidence of fraudulent

2  misrepresentation of the level of care provided by Dr. Lorance to Mr. Gales and evidence

3  indicating intentional concealment of a failure to follow standard medical procedures in

4  analyzing the x-ray and following up with a personal consultation with Mr. Gales."  Dkt. 12, at 3.

5  Plaintiffs also maintain that, based on apparent authority, they believed that Dr. Lorance was a

6  VA employee.  *Id.*

7        Plaintiffs fail to provide any evidence to support their assertions that Dr. Lorance or his

8  employer committed fraud or intentional concealment as is Plaintiffs' burden in opposing a

9  motion for summary judgment.  Aside from pointing again to the negligence that forms the basis

10  of the action, Plaintiffs fail to point to any evidence to suggest that Dr. Lorance in any manner

11  knew of his alleged negligence or "hampered [their] discovery of possible negligence."  *Gunnier,*

12  at 867.

13        Even if Plaintiffs' suppositions regarding Dr. Lorance and "his motives" were true, by

14  August 6, 2012, when Mr. Gales obtained his medical record, it is undisputed that he knew that

15  Dr. Lorance was the doctor he saw in 2009, that the x-ray in 2009 showed the mass in his lung

16  that Dr. Lorance failed to tell him about, that Dr. Lorance did not properly chart the findings of

17  the 2009 x-ray (for whatever reason), and that Mr. Gales had inoperable lung cancer.  Plaintiffs

18  knew at that point everything they know now, except Dr. Lorance's employment status as an

19  independent contractor, and have failed to make any showing that his employment status is

20  relevant to whether he committed fraud or intentionally concealed his alleged negligence.

21        Further, Plaintiffs point to no evidence that the VA committed fraud or intentional

22  concealment.  Mr. Gales filed an administrative tort claim with the VA on August 11, 2014 for

23  its failure to properly treat his lung cancer; two years after his diagnosis and receipt of his

24

1  medical records; over five years after he saw Dr. Lorance.  The VA informed him of Dr.

2  Lorance's legal status as an independent contractor two months later, on October 17, 2015.

3  There is no evidence that the VA committed fraud, intentionally concealed or hampered

4  Plaintiffs' discovery of Dr. Lorance's alleged negligence.

5  **D.  CONCLUSION**

6      The undersigned is saddened by Plaintiffs' situation.  Dr. Lorance's legal status as an

7  independent contractor, and not an employee of the VA, however, has not been shown to be

8  relevant to whether fraud or intentional concealment took place.  Plaintiffs' claims against these

9  Defendants are barred by the statute of limitations.  No equitable tolling provisions apply.

10  Defendants' motion to summarily dismiss this case (Dkt. 10) should be granted.

11  **III.   ORDER**

12      Therefore, it is hereby **ORDERED** that:

13  - Defendants' Motion for Summary Judgment based on the Statute of Limitations

14    (Dkt.10) **IS GRANTED**; and

15  - This case **IS DISMISSED**.

16      The Clerk is directed to send uncertified copies of this Order to all counsel of record and

17  to any party appearing pro se at said party's last known address.

18      Dated this 5th day of January, 2016.

19

20

21  ROBERT J. BRYAN
    United States District Judge

22

23

24